William K. TATE, Petitioner-Appellant, v.
The NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Debtor.

No. 362, Docket 28523.

United States Court of Appeals Second Circuit.

Argued May 4, 1964.

Decided May 28, 1964.

**450**

William L. Hadden, New Haven, Conn. (Pouzzner & Hadden, New Haven, Conn., on the brief), for debtor-appellee.

John Q. Tilson, Jr., New Haven, Conn. (S. Robert Jelley and Wiggin & Dana, New Haven, Conn., on the brief), for petitioner-appellant.

Before WATERMAN, FRIENDLY and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

William K. Tate petitioned the United States District Court for the District of Connecticut, Robert P. Anderson, Chief Judge, for an order directing the trustees of the New Haven Railroad, currently in reorganization proceedings, to resume his pension payments. The District Court denied the petition, holding that because of his insistence on a written employment contract embodying specific pension provisions, the petitioner must be treated as any other general unsecured creditor whose contract has been disaffirmed by the trustees. We disagree, and reverse and remand the case for proceedings not inconsistent with this opinion.

In 1954 Tate accepted an offer from the New Haven Railroad to become Vice President-Freight Traffic at a salary of $40,000 a year. At that time Tate was 56 years old and had been employed for more than 37 years with The Nashville Chattanooga & St. Louis Railway (N. C. & St. L.), where he had risen to Vice President-Traffic at an annual salary of about $21,500. As an officer of the N. C. & St. L., Tate had a written employment contract specifically setting out his pension rights. When he agreed to come with the New Haven, Tate, disturbed at the prospect of losing 37 years of accumulated pension rights by switching jobs at age 56, said that he would come with the New Haven only if he had an employment contract assuring him that he would be given credit for his 37 years of service with the N. C. & St. L. in determining his pension rights with the New Haven. The New Haven agreed to Tate's request, and his written employment contract, in keeping with the railroad's pension plan then in effect, provided that the New Haven would pay him a monthly pension of 1% of his average monthly salary during the 120 months preceding the retirement date, multiplied by the total number of years with the New Haven, if he remained in the railroad's employ until he reached the age of

65 or became disabled after reaching the age of 61. The contract further stated that for the purpose of computing the total number of years of service, Tate's 37 years with the N. C. & St. L. would be added to his service with the New Haven.

Tate served as Vice President-Freight Traffic with the New Haven from December 15, 1954 until May 27, 1959, when he retired because of a physical disability. Since at that time, Tate had attained the age of 61, the directors of the New Haven voted him a monthly pension of $1262.87, less his Railroad Retirement annuity of $177, or a net monthly pension from the New Haven of $1085.81. His pension was computed in the same manner as any other New Haven officer earning more than $20,000 a year except that his service with the N. C. & St. L. was treated as if it had been service with the New Haven.[1] On July 7, 1961 the New Haven filed a petition for reorganization under Section 77 of the Bankruptcy Act, 11 U.S.C. § 205. Judge Anderson approved the petition that same day in an order that also authorized the railroad to continue to make "all payments due from time to time on existing pension systems * * *." Tate received his monthly pension payments from the New Haven until July 31, 1961. On August 14, 1961 the Trustees of the railroad filed a petition for a further order directing the continuance of payments under the existing pension systems and permitting payments to employees becoming eligible to receive pension payments. On August 21, 1961 Judge Anderson entered Order No. 12, which authorized such payments with this caveat: "this order shall not be construed as authorizing payments under individual contracts with the fol-

lowing persons: Howard S. Palmer, William K. Tate, Samuel J. Massey, Jr., George Alpert, except to the extent, if any, to which such payments are, in the judgment of the Trustees, pursuant to the existing pension systems." On November 22, 1961 the Trustees disaffirmed Tate's employment contract.

■ The District Court found Tate's formal contract fatal to his claim for his pension payments. The court reasoned that since he sought to be treated differently from the other officers and employees, who might have their rights to particular rates of pension payments reduced or abolished altogether by the directors, Tate, by freezing his rate of retirement compensation into a fixed contractual obligation, must be treated as a contract creditor rather than as an ordinary pensioner. We think this technical distinction too fine for a court of equity to rely on to support a deprivation of the petitioner's pension.

Tate's employment contract has been disaffirmed, and we see no reason he should not now be treated as any other pensioner retired prior to reorganization. It is true that by virtue of the action of the directors on April 28, 1958, see fn. 1, Tate received a larger pension from his retirement to the date his payments were discontinued than his contract required. However, in 1961 shortly after receiving authorization to continue the pension payments, the Trustees reverted to the ten year average, so that an executive with forty-one years of service on the New Haven, compensated at the same rate as Tate over the last ten years, would receive exactly the same pension as Tate's contract called for.

---

1. On April 28, 1958 the directors of the New Haven had voted to compute pensions for employees earning more than $20,000 a year on average salary for five instead of ten years preceding retirement. Although Tate's written contract, in accordance with the pension plan in effect at the time he was hired, provided that his pension would be computed on his average salary for the last ten years, the 1958 amendment was applied to him. Accordingly, his pension was based on 1% of his average monthly salary for the last five years multiplied by his number of years of railroad service up to a maximum of 40 (4 years, 5½ months with the New Haven @ $3,333.-33; 2½ months with the N. C. & St. L. @ $1,759.92; and 4 months with the N. C. & St. L. @ $1,676.12 X 40% = $1,262.-81 — $177 Railroad Retirement annuity = $1,085.81).

**452**

Neither do we believe that Tate's lack of sufficient service on the New Haven to qualify under its pension plan should automatically disqualify him from any pension. Plaintiff's evidence showed that the practice of the railroad industry including the New Haven was to credit an employee with service on another railroad for pension purposes. The minutes of the meetings of the New Haven's directors or Trustees from December 3, 1958 to March 21, 1962 show that credit for pension purposes for service on other railroads was given seven officers or supervisors hired during that period, and two of the retired employees of the New Haven presently receiving pensions, Henry D. Boynton and Dale D. Thompson, have had their pensions calculated by totaling their years of service with the New Haven and with other railroads. That Tate should be treated differently from these men and in effect be completely deprived of a pension because in changing jobs at the age of 56 he thought it prudent to have the terms of his pension rights embodied in the terms of his written employment contract, strikes us as inequitable. Moreover, the purpose of continuing pension payments to employees retired prior to reorganization— maintaining the loyalty and incentive of present employees and the facilitating of the recruitment of new employees— might well be undercut by the discontinuance of Tate's pension for no better reason than Tate's cautious insistence of having the terms and conditions of his employment in writing. This is not to say, of course, that the court need give any consideration either to the terms of the written contract or the votes of the Board of Directors in Tate's case prior to reorganization in determining, with the aid of further testimony if he is so advised, what amount equitably should be considered a fair pension in the case of Tate.

The decision of the District Court is reversed, and the case is remanded for a determination of the proper pension that should be paid to Tate in view of the purposes of Order No. 12.