OPINION OF THE COURT
 

 GIBBONS, Circuit Judge.
 

 David C. Bevan, a creditor and retired executive of Penn Central Transportation Company (PCTC), debtor, appeals from Order Nos. 4001 and 4008 which classified his claims against the debtor’s estate under a plan of reorganization.
 
 [1]
 
 Bevan’s claims were previously before this court in
 
 In re Penn Central Transportation Company,
 
 484 F.2d 1300 (3d Cir. 1973),
 
 cert. denied,
 
 415 U.S. 951, 94 S.Ct. 1475, 39 L.Ed.2d 567 (1974). In that case, we affirmed the district court’s limitations on and classifications of claims under unfunded pension plans and a contingent compensation plan arising in the context of allowable operating expenses during the reorganization of the debtor. The reorganization court has continued these limitations in the actual plan of reorganization, and Bevan again objects. He contends that the equitable considerations for originally imposing these limitations no longer exist in the implementation of the plan. We affirm the reorganization court’s classification of Bevan’s claims.
 

 I. FACTUAL AND PROCEDURAL BACKGROUND
 

 Our previous consideration of these claims is not determinative of the issues now before us, but is certainly the best starting point for an analysis of Bevan’s current contentions. By Order No. 12 in July of 1970, the reorganization court enjoined the debtor until further order from
 
 *1113
 
 paying any compensation or emolument in excess of an annual rate of $50,000 to any officer or employee or former officer or employee. In Order No. 1087, the reorganization court considered the extent to which claims of employees under certain unfunded pension plans and a Contingent Compensation Plan (CCP) should be paid during reorganization as operating expenses of the debtor.
 
 In re Penn Central Transp. Co.,
 
 354 F.Supp. 408 (E.D.Pa.1973). The court authorized the trustees to continue funding of the funded pension plans and relegated qualifying participants under the CCP to the status of general unsecured creditors. The entitlements under the CCP were to be calculated on the basis of a formula and to be paid as operating expenses only as cash permitted. In addition to the formula limitations, the court imposed the $50,000 limitation of Order No. 12 to all of the programs. Accordingly, no payment to an employee under any unfunded program could be made if, by reason thereof, such employee would receive more than $50,000 in the aggregate annually from the debtor. This court affirmed Order Nos. 1087 and 1088, holding that the reorganization court had not abused its equitable discretion in the imposition of these limitations. 484 F.2d at 1306. Petitions for certiorari by Bevan and several PCTC former officers were denied. 415 U.S. 951, 94 S.Ct. 1475, 39 L.Ed.2d 567 (1974).
 

 The Trustees Amended Plan of Reorganization was approved by the court in March, 1978. 458 F.Supp. 1234 (E.D.Pa.1978),
 
 aff’d
 
 596 F.2d 1102, 1127, 1134, 1155 (3d Cir.),
 
 cert. denied,
 
 444 U.S. 834, 100 S.Ct. 67, 68, 62 L.Ed.2d 44 (1979). And in August, 1978, the Plan was confirmed and ordered implemented by October, 1978. 458 F.Supp. 1364 (E.D.Pa.1978). The Plan provided,
 
 inter alia,
 
 for full satisfaction of deferred tax claims, and the trustees were authorized to pay timely filed and liquidated prebank-ruptcy personal injury and wrongful death claims in cash. Following the eonsummation of the Plan in October, the Penn Central Corporation (PCC), the new name for the reorganized PCTC, has continued to make the same payments that the PCTC did with respect to unfunded pension plans and the CCP.
 

 In April, 1978, the Trustees petition for funding the unfunded pension plans under the Regional Rail Reorganization Act of 1973,45 U.S.C. §§ 701-794, was approved in Order No. 3497. There were no objections to the funding other than Bevan’s objection to the $50,000 limitation.
 

 On April 1, 1976, Conrail took over the funded plan and payments under that plan were continued. However, the trustees were still expected to recognize the payments made under that plan in applying the $50,000 limitation to their-other benefit programs.
 
 [2]
 

 Initially, there was a voluntary proposed compromise between the PCTC Trustees and Bevan which consisted of a removal of the $50,000 per year ceiling in exchange for Bevan waiving claims to eight years of interest accrued since 1970. However, this negotiation activity terminated and Bevan filed a petition with the court for reclassification which the PCTC trustees ultimately decided to oppose. Opposition to the petition was later concurred in by the PCC.
 

 More specifically, Mr. Bevan’s claims consist of $325,815 for amounts which would have been paid to him pursuant to Order No. 1087 under the CCP but for the $50,000 limitation, $210,000 of contract pension payments and unpaid salary of $22,500 — both of which would have been paid but for the $50,000 limitation, and
 
 inter vivos
 
 annual future contract pension payments at the rate of $27,627. The reorganization court held that the continuation of the $50,000 limitation and the proposed classification were not unjust even though the reorganization turned out better than was expected in 1973. In Order No. 4001, the court classified the salary and CCP claims as Class H
 
 *1114
 
 claims, and the remaining claims as Class M claims. According to the Plan of Reorganization, general unsecured prebankruptcy claims are assigned to Class M and receive a Certificate of Beneficial Interest equal to 30% of the claim plus common stock of the PCC for the remainder. Unsecured claims entitled to some priority are assigned to Class H. Order No. 4001 was vacated because copies thereof were not timely served, but that Order was readopted and reentered as Order No. 4008. Only Bevan appeals these Orders.
 
 [3]
 

 II. THE CLASSIFICATION OF THE BE-VAN CLAIMS
 

 A.
 
 The Dollar Limitation Did Not Constitute Unlawful Discrimination.
 

 Bevan contends that the continued limitation on payments to him result in unlawful discrimination because other claimants in the same class have had their total claims paid in cash. The $50,000 dollar limitation has not limited payments to other employees (except Saunders, Smucker, and the Estate of Mr. Symes) because their claims do not exceed that amount. But all employees are subject to exactly the same limitation: the result is a differential impact rather than an illegal discriminatory one. Bevan argues, however, that this discrimination between claimants violates the Regional Rail Reorganization Act of 1973, 45 U.S.C. §§ 701-794, and “fundamental principles of Bankruptcy law.” Brief for Appellant at 16. We find no such violations of the statutes or violations of the spirit of these laws.
 

 Bevan and the other group of employees who are receiving cash payments under the CCP formula and the unfunded pension plan are a subclass of the larger class of unsecured prebankruptcy claimants. The general rule, in the context of this larger class, is that claimants within the same class should be treated in the same fashion. If Bevan’s claim is evaluated within this broader context, it becomes clear that as a member of this subclass, he has enjoyed priority treatment by receiving some cash for his claims. If these subclass claimants were to be treated similarly to other unsecured prebankruptcy claimants, they would not receive any cash and their claims would be classified as Class M under the Plan. Class M treatment would only entitle them to common stock and certificates of beneficial interest.
 

 This discriminatory treatment in favor of these employees during reorganization was discussed by this court in Bevan’s first appeal. We stated:
 

 This court has not explicitly ruled on the practice. Since no party to this appeal challenges it, we accept it, for present purposes, as a governing rule.
 

 484 F.2d at 1304-05. Thus, we approved the imposition of the dollar limitation during reorganization in conjunction with allowing a priority to this subclass of unsecured general creditors because no party appealed the preferential treatment of that subclass.
 

 In addition, we specifically left unanswered the question of the propriety of continuing this favorable discrimination in a reorganization plan.
 
 Id.
 
 at 1305. Again, no party in this case challenges the ultimate priority accorded to this subclass of claimants. And again, we accept this principle for present purposes as the governing rule without deciding the issue. As we stated in Bevan’s previous appeal, the cash payments made to Bevan and the limitations thereon must be evaluated in terms of “the powers of a court of equity to deal practically” with the enforcement of these executory pension contract claims. 484 F.2d at 1305. Therefore, “[accepting the principle of some payment of unfunded pension liabilities, no more is required than a responsible exercise of equitable discretion.”
 
 Id.
 
 at 1306.
 

 B.
 
 Equitable Discretion.
 

 The reorganization court has exercised its equitable discretion by balancing the rea
 
 *1115
 
 sons for preferring this subclass of unsecured creditors against the level of pensions deemed appropriate given the debtor’s resources and the individual circumstances of the claimant. Apparently, some payment of unfunded pension liabilities is a recognized tradition in railroad reorganizations because of the practical necessity of continuing the operation of the railroad during reorganization. The usual justification for treating these payments as necessary operating expenses and a cost of doing business is that they are necessary to preserve the morale of present and future employees, and to deal with continuous problems of employee retention and recruitment.
 
 [4]
 
 The necessity of preserving employee morale is a very pressing concern
 
 during
 
 the period of reorganization when the railroad must continue to operate. It is at that time that employee retention and recruitment is likely to be a severe problem because of the very nature of the debtor’s position. Presumably, this employee morale problem becomes less weighty in the context of the actual plan of reorganization because there is no longer the same degree of uncertainty. Thus, the usual justifications for preferential treatment of payments of unfunded pension plans during reorganization become less compelling when applied to the actual plan of reorganization. It is against this background that we must examine Bevan’s contentions of the changed circumstances of the debtor.
 

 Bevan contends that the reasons for originally imposing the $50,000 limitation during reorganization have disappeared and thus there is no equitable justification for its continuation as part of the plan of reorganization. Originally, the district court deemed the dollar limitation as appropriate so long as the debtor was unable to pay state and local taxes and prebankruptcy personal injury claims. As it turned out, the financial situation of the debtor is more positive than envisioned by the reorganization court in 1973. Under the plan of reorganization both of these claims have been paid. Bevan therefore argues that he is now entitled to be paid fully in cash because there is no justification — such as lack of funds — for continuing this limitation, particularly since almost all other employees received full cash payment. But payments of these claims must be viewed as an integrated part of a plan based upon various compromises and settlements. Even though some of the other creditors have been paid in full, others have not.
 

 Moreover, the reorganization court, in exercising its equitable discretion, was entitled to not only look to the changed circumstances of the debtor, but also to the changed circumstances of the executive employee. In addition, the court could continue to evaluate what level of pension payments would enable each participant to maintain a decent standard of living. The court found that Bevan’s prebankruptcy salary was “princely” and that the pension contracts were “equally generous.” The $50,000 limitation was not found, however, to prevent Bevan from affording a decent standard of living.
 

 The district court also appropriately considered Bevan’s involvement in the MDL 56
 
 Penn Central Securities Litigation
 
 which was based upon charges of mismanagement and misconduct. Bevan was a defendant in that case. Litigation never established liability because the case was settled. However, Bevan was required to contribute to the settlement fund. His amount of contribution was based upon his limited financial resources, and, according to the trustees, the fact that his annual pension or payment from the debtor was limited to $50,000 dollars per annum.
 
 See
 
 App. 18a. As the district court correctly noted, that fact alone does not mean that Bevan’s claim in this litigation should be forfeited as a further payment of civil liability. On the other hand, it was certainly not an abuse of
 
 *1116
 
 discretion for the court to consider the totality of the circumstances, including this settlement of the MDL 56 litigation, and to conclude that there was no justification for vacating the $50,000 limitation.
 

 As we previously stated, the assumption for present purposes that there is an equitable recognition of some payment of unfunded pension liabilities “does not necessitate confining the court to the straight jacket of the underlying contract.” 484 F.2d at 1306. Given the totality of the reorganization and the other circumstances relating to the appellant, the district court concluded that it should limit the preference given to employees. Therefore, we find no abuse of equitable discretion in Order Nos. 4001 and 4008.
 

 III. JUDGMENT
 

 The judgment of the trial court will be affirmed.
 

 [1]
 

 . The district court’s opinion and order is reported at 477 F.Supp. 166 (1979).
 

 [2]
 

 . It is not disputed that the debtor has no interest in the Plan for Supplemental Pensions because that Plan is primarily funded from employee contributions. 354 F.Supp. at 409. Order No. 1087 authorized the Trustees to continue that Plan and make the necessary employer contributions. That aspect of the order was never appealed. 484 F.2d at 1302 n. 2.
 

 [3]
 

 . This $50,000 limitation has reduced the benefits to six individuals, including Bevan: Messrs. Saunders, Greenough, Perlman, and Smucker and the estate of Mr. Symes.
 
 See
 
 484 F.2d at 1301 n. 1. Apparently at this time, the limitation no longer affects Greenough and Perlman. In any event, the petition in the district court involved only Bevan, Saunders, and Symes. Neither of the other two has appealed.
 

 [4]
 

 .
 
 See In re Penn Central Transp. Co.,
 
 484 F.2d at 1304, 1306;
 
 Alpert v. New York, New Haven and Hartford R. R. Co.,
 
 348 F.2d 304, 306-07 (2d Cir. 1965);
 
 Tate v. New York, New Haven & Hartford R. R.,
 
 332 F.2d 449 (2d Cir. 1964);
 
 Bowen v. Hockley, 71 F.2d 781, 784,
 
 785-86 (4th Cir. 1934); Myers,
 
 Financial Impact of Pension Costs on the Railroad Industry, 7
 
 Lab. L.J. 265, 266 (1956).